IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>    v.   )<br>) Criminal No. 21-30E<br>SHANE HVIZDZAK,   )<br>)<br>    Defendant. ) | |

# MEMORANDUM AND ORDER OF COURT

Presently before the Court is Defendant Shane Hvizdzak's ("Shane") Motion to Unfreeze Limited Assets to Pay for Attorney's Fees, (Docket No. 94), Defendant Sean Hvizdzak's ("Sean") Response to and Joinder in the Motion, (Docket No. 96), the Government's Response in Opposition thereto, (Docket No. 97), and Shane's Reply to the Government's Response. (Docket No. 98). For the reasons set forth herein, Defendant's Motion will be denied.

## I.    BACKGROUND

On August 10, 2021, Shane and Sean were charged in a 65-count Indictment with the following: one count of conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349; 52 counts of wire fraud, in violation of 18 U.S.C. § 1343; and 12 counts of money laundering, in violation of 18 U.S.C. § 1957. (Docket No. 1). The Indictment contains forfeiture allegations alleging that, as a result of the commission of the offenses charged in the Indictment, Defendants acquired proceeds and property that are subject to forfeiture pursuant to 28 U.S.C. § 2461(c)[1] and

---

[1]    According to this provision, "[i]f a person is charged in a criminal case with a violation of an Act of Congress for which the civil or criminal forfeiture of property is authorized, the Government may include notice of the forfeiture in the indictment or information pursuant to the Federal Rules of Criminal Procedure. If the defendant is convicted of the offense giving rise to the forfeiture, the court shall order the forfeiture of the property as part of the sentence in the criminal case pursuant to the Federal Rules of Criminal Procedure and section 3554 of Title 18, United States Code. The procedures in section 413 of the Controlled Substances Act (21 U.S.C. § 853) apply to all stages of a criminal forfeiture proceeding, except that subsection (d) of such section applies only in cases in which the defendant is convicted of a violation of such Act." 28 U.S.C. § 2461(c).

18 U.S.C. § 981(a)(1)(C).[2] (*Id.* at 24). The Indictment lists the following property as subject to forfeiture: (1) $341,532.00 in United States currency; (2) a Unisex Rolex GMT Master II watch with Jubilee bracelet; (3) a Gent's Rolex Sea Dweller Mechanical Movement watch with Oyster bracelet; (4) 1.83355437 Bitcoin seized from the Atomic Wallet; (5) 0.09983592 Bitcoin seized from the Exodus Wallet; (6) 0.8756939 Ethereum digital currency; (7) 3,840.84 Gemini Dollar digital currency; (8) 22.087194 Litecoin digital currency; (9) 7,741.7903 Tether digital currency; (10) 252,715.23 USD Coin digital currency; and (11) 561 High Street, Bradford, Pennsylvania 16701 (collectively, the "Listed Property"). (*Id.* at 24-25).

Shane and Sean also are Defendants in a parallel civil enforcement action initiated by the Securities and Exchange Commission ("SEC") alleging that they and certain affiliated entity defendants violated the Securities Act of 1933 and the Securities Exchange Act of 1934 by fraudulently raising and subsequently misappropriating tens of millions of dollars of largely retail investor funds from the sale of limited partnership interests in High Street Capital Fund USA, LP that they claimed would invest in digital assets. (*See Securities and Exchange Commission v. Hvizdzak Capital Management, LLC, High Street Capital LLC, High Street Capital Partners, LLC, Shane Hvizdzak and Sean Hvizdzak*, Civ. No. 20-154E, Docket No. 74, ¶ 1). Shortly after the civil action commenced, the Court entered a temporary restraining order followed by a preliminary injunction freezing approximately $6 million of investor funds that remained in Defendants' financial accounts. (*Id.*, Docket Nos. 8, 21). The Court subsequently ordered the liquidation of certain digital assets, which increased the total value of those frozen assets to over $7 million. (*Id.*,

---

[2] Pursuant to this provision, "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to a violation of [certain sections of Title 18 of the United States Code] or any offense constituting 'specified unlawful activity' (as defined in section 1956(c)(7) of this title), or a conspiracy to commit such offense" is subject to forfeiture to the United States. 18 U.S.C. § 981(a)(1)(C). "Specified unlawful activity" means "any act or activity constituting an offense listed in section 1961(1) of this title except an act which is indictable under subchapter II of chapter 53 of title 31." 18 U.S.C. § 1956(c)(7)(A). Section 1961(1) includes wire fraud under 18 U.S.C. § 1343 and money laundering under 18 U.S.C. § 1957. *See* 18 U.S.C. § 1961(1).

Docket Nos. 68; 74, ¶ 3). The SEC contends that at least $24 million in additional investor funds entrusted to Defendants remain missing.³ (*Id.*, Docket Nos. 74, ¶ 3; 149 at 3).

On March 25, 2022, Shane's retained counsel, Attorney Efrem M. Grail, moved to withdraw as counsel of record in both the criminal and civil cases. (Crim. No. 21-30E, Docket No. 59; Civ. No. 20-154E, Docket No. 121). Subsequently, Shane took extensive time in attempting to secure new counsel, causing the Court to conduct numerous status conferences to discern whether (and when) he would be engaging replacement counsel for himself in both the criminal and civil cases and for the affiliated entity defendants in the civil case. (Docket Nos. 61, 62, 66, 74, 80). Given the apparent lack of progress related to Shane's attempt to retain new counsel, on July 1, 2022, the Court granted Mr. Grail's motion to withdraw as counsel in this criminal case and appointed Assistant Federal Public Defender Aaron Sontz to represent Shane.⁴ (Docket Nos. 84, 86).

At a hearing in the civil case on October 19, 2022, Shane represented that he retained Attorney Michael DeRiso to represent him and the affiliated entity defendants in both the criminal and civil cases, but that he needed a brief period to secure funds to finalize the retention. (Civ. No. 20-154E, Docket No. 136). The Court gave Shane until October 21, 2022 to complete this engagement, but Shane failed to do so by that deadline. Then, on November 4, 2022, with legal representation for Shane and the affiliated entity defendants in the civil case still unresolved, the

---

³ The Court partially stayed the civil case on August 11, 2021, after Shane and Sean were indicted, but the stay did not prelude the SEC from continuing to search for and locate additional investor assets through both formal and informal means of discovery. (Civ. No. 20-154E, Docket Nos. 94, 111). The SEC now represents that it has not located any additional investor assets despite completing its search after undertaking diligent efforts. (*Id.*, Docket No. 149 at 4).

⁴ The Court has been advised that AFPD Sontz is no longer with the Federal Public Defender's Office; however, at present, the Federal Public Defender's Office remains as counsel of record for Shane. To that end, First Assistant Federal Public Defender Michael Novara appeared on Shane's behalf at a recent status conference. (Docket No. 99).

Court issued an Order to Show Cause directing Shane to explain why substitute counsel had not yet entered an appearance. (*Id.*, Docket No. 140).

On November 8, 2022, Mr. DeRiso entered his limited appearance in both the criminal and civil cases in order to file a motion to unfreeze assets for legal representation. (Crim. No. 21-30E, Docket Nos. 91, 92, 93; Civ. No. 20-154E, Docket Nos. 142, 143, 144). Thereafter, Mr. DeRiso filed motions in both cases seeking to unfreeze $250,000 to pay for attorney's fees on behalf of Shane (and the affiliated entity defendants in the civil case). (Crim. No. 21-30E, Docket No. 94; Civ. No. 20-154E, Docket No. 146). Sean filed responses in both cases joining Shane's motions. (Crim. No. 21-30E, Docket No. 96; Civ. No. 20-154E, Docket No. 148). Although Sean does not take a position on Shane's motions and defers to the Court's discretion, he submits that if the Court were to unfreeze assets for Shane, then in the interest of equity it ought to unfreeze a commensurate amount of assets for Sean's attorney's fees, too. (*Id.*).

As relevant to the criminal case, the Government submits that Shane's Motion (and Sean's joinder in it) should be denied without a hearing for the following reasons: (1) title to the Listed Property in the Indictment's forfeiture allegations vested with the United States when Defendants committed the charged offenses, and there is no constitutional principle that provides an individual the right to give another's property to a third party; (2) the Sixth Amendment does not extend beyond Defendants' right to spend their own legitimate, nonforfeitable assets to obtain counsel of their choice; and (3) Defendants have not even alleged, much less established, facts sufficient to warrant a hearing. (Docket No. 97 at 1-2, 17).

The Court heard argument on Shane's Motion at a status conference held on December 1, 2022, and then took the matter under advisement. (Docket No. 99). After careful consideration of the parties' positions in light of prevailing legal authority, the Court must deny Shane's request to unfreeze assets to pay for attorney's fees.

## II. <u>ANALYSIS</u>

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. The Sixth Amendment guarantees not only the right to effective assistance of counsel, *see, e.g.*, *Buck v. Davis*, 580 U.S. 100, 118 (2017), but also the "fair opportunity to secure counsel of [one's] own choice." *Powell v. Alabama*, 287 U.S. 45, 53 (1932).

The Supreme Court has recognized, however, that "[t]his 'fair opportunity' for the defendant to secure counsel of choice has limits." *Luis v. United States*, 578 U.S. 5, 11 (2016). For instance, "a defendant may not insist on representation by an attorney he cannot afford." *Wheat v. United States*, 486 U.S. 153, 159 (1988). To that end, the Supreme Court has articulated the contours of the Sixth Amendment right to retain counsel of one's own choice as follows:

> Whatever the full extent of the Sixth Amendment's protection of one's right to retain counsel of his choosing, that protection does not go beyond "the individual's right to spend his own money to obtain the advice and assistance of . . . counsel." *Walters v. Nat'l Ass'n of Radiation Survivors*, 473 U.S. 305, 370, 105 S. Ct. 3180, 3215, 87 L.Ed.2d 220 (1985) (Stevens, J., dissenting). A defendant has no Sixth Amendment right to spend another person's money for services rendered by an attorney, even if those funds are the only way that that defendant will be able to retain the attorney of his choice.

*Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 626 (1989). Accordingly, "those who do not have the means to hire their own lawyers have no cognizable complaint so long as they are adequately represented by attorneys appointed by the courts." *Id.* at 624.

Shane does not dispute these propositions in his Motion or Reply. Nonetheless, he requests that the Court unfreeze $250,000 from assets seized by the United States relative to this criminal case, as well as assets seized by the SEC in relation to the civil case, so that he may retain new counsel in both cases. (*See generally* Docket No. 94). If the Court is inclined to grant such relief, Sean also requests that the Court unfreeze an equal amount to pay his attorney's fees. (*See*

*generally* Docket No. 96). The weight of authority dictates that Defendants are not entitled to the relief they seek under the circumstances of this case.

As stated, the Indictment contains forfeiture allegations alleging that the Listed Property is subject to forfeiture. (Docket No. 1 at 24-25). The Supreme Court has explained that "[c]riminal forfeitures are imposed upon conviction to confiscate assets used in or gained from certain serious crimes." *Kaley v. United States*, 571 U.S. 320, 323 (2014) (citing 21 U.S.C. § 853(a)). "Forfeitures help to ensure that crime does not pay: They at once punish wrongdoing, deter future illegality, and 'lessen the economic power' of criminal enterprises." *Id.* (quoting *Caplin*, 491 U.S. at 630). The Government also uses forfeited property "to recompense victims of crime, improve conditions in crime-damaged communities, and support law enforcement activities like police training." *Id.* (citing *Caplin*, 491 U.S. at 629-30).

In *Caplin*, the Supreme Court rejected the argument that the burden placed on a defendant's Sixth Amendment right to retain counsel of his choice by the forfeiture statutes outweighs the Government's interest in forfeiture. *See Caplin*, 491 U.S. at 631 ("[T]here is a strong governmental interest in obtaining full recovery of all forfeitable assets, an interest that overrides any Sixth Amendment interest in permitting criminals to use assets adjudged forfeitable to pay for their defense."). Likewise, the Third Circuit Court of Appeals has observed that "[a defendant] has a right to counsel that he can afford to hire, but he does not have a right to the release of funds subject to forfeiture to obtain counsel of his choice." *United States v. Thomas*, 440 F. App'x 148, 151 (3d Cir. 2011)[5] (citing *Caplin*, 491 U.S. at 626-33). As such, "a defendant cannot use assets

---

[5] In *Thomas*, the defendant sent a letter to the district court expressing his dissatisfaction with his court-appointed counsel and suggested that the property identified as forfeitable in the Indictment's forfeiture allegation could be used to retain private counsel from a list of preferred counsel he provided. *Thomas*, 440 F. App'x at 150. Given that the defendant was unable to afford private counsel, the district court appointed him new counsel in order to address any potential problems with his previously appointed counsel. *Id.* On appeal, the Third Circuit rejected the defendant's claim that his Sixth Amendment right to counsel had been violated, finding that he had no right to liquidate the property subject to forfeiture because it was not rightfully his. *Id.* at 151.

subject to forfeiture to pay for his defense, even if the defendant has no other source of funds, because assets subject to forfeiture do not rightfully belong to the defendant." *Id.* (citing *Caplin*, 491 U.S. at 631). Property is properly adjudged to be forfeitable, where, as in this case, there is a finding by the grand jury of probable cause to believe that it is subject to forfeiture under a statute. *See United States v. Monsanto*, 491 U.S. 600, 615 (1989) ("We have previously permitted the Government to seize property based on a finding of probable cause to believe that the property will ultimately be proved forfeitable.") (citations omitted). Shane does not address these legal principles in his Motion or Reply, much less cite any contrary authority that would permit the Court to unfreeze assets alleged to be subject to forfeiture.

The Supreme Court's more recent decision in *Luis* does not compel a different conclusion. In *Luis*, the Supreme Court held that "the pretrial restraint of legitimate, untainted assets[6] [*i.e.*, those not traceable to a criminal offense] needed to retain counsel of choice violates the Sixth Amendment." *Luis*, 578 U.S. at 10. In other words, a defendant has "a Sixth Amendment right to use her own 'innocent' property to pay a reasonable fee for the assistance of counsel." *Id.* at 23. Here, Shane does not contend in his Motion, much less attempt to establish, that any of the Listed Property alleged to be subject to forfeiture is untainted.

Finally, the Court notes that Shane has not requested a hearing to offer evidence that any of the Listed Property is untainted. (*See generally* Docket Nos. 94, 98). Even if he had requested a hearing, one is not warranted based on the present record. To obtain such a hearing, a defendant is required to (1) "demonstrate to the court's satisfaction that [he] has no assets, other than those

---

[6] The Supreme Court explained that untainted property "belongs to the defendant, pure and simple. In this respect it differs from a robber's loot, a drug seller's cocaine, a burglar's tools, or other property associated with the planning, implementing, or concealing of a crime." *Luis*, 578 U.S. at 12-13. The property at issue in *Luis* was not loot, contraband, or otherwise tainted; rather, it belonged to the defendant. *Id.* at 13. That fact distinguished *Luis* from *Caplin* (involving a post-conviction forfeiture that took from a convicted defendant funds he would have used to pay his lawyer) and *Monsanto* (involving a pretrial restraining order that prevented a defendant who was not yet convicted from using certain assets to pay for his lawyer), where the property at issue in those cases was tainted, and "title to the property therefore had passed from the defendant to the Government before the court issued its order freezing (or otherwise disposing of) the assets." *Id.* at 13, 14.

restrained," and (2) "make a prima facie showing of a bona fide reason to believe the grand jury erred in determining that the restrained assets constitute or are derived, directly or indirectly, from gross proceeds traceable to the commission of the offense." *United States v. Yusuf*, 199 F. App'x 127, 132 (3d Cir. 2006) (quoting *United States v. Jones*, 160 F.3d 641, 647 (10th Cir. 1998)). If a defendant satisfies these initial burdens, the court should then conduct an adversarial hearing at which "the government must establish probable cause to believe that the restrained assets are traceable to the underlying offense." *Id.* (quoting *Jones*, 160 F.3d at 647).

Here, Shane does not remotely satisfy these requirements. He broadly alleges in his Motion that "the freezing of the aforementioned assets have effectively rendered [him] destitute and unable to afford counsel." (Docket No. 94, ¶ 16). Not only is this assertion insufficient to satisfy the first requirement, *see e.g., United States v. Bonventre*, 720 F.3d 126, 131 (2d Cir. 2013) (explaining that a defendant "must make a sufficient evidentiary showing that there are no sufficient alternative, unrestrained assets to fund counsel of choice"), the record before the Court also calls into question its accuracy for several reasons. Shane previously was represented by Mr. Grail as retained counsel beginning in June 2020, Mr. Grail moved to withdraw on March 25, 2022, and he was permitted to withdraw on July 1, 2022. (*See* Docket Nos. 59, ¶ 1; 86). The Listed Property already had been seized when Mr. Grail represented Shane, thus it stands to reason that Shane had been paying Mr. Grail with other assets. Further, although the Court ultimately appointed the Federal Public Defender's Office to represent Shane on July 1, 2022, his financial ability to pay for counsel was unclear to the Court based on the information he provided in his financial affidavit. (*See* Docket No. 84). Accordingly, the Court concluded that Shane may or may not be indigent within the meaning of that term, and the appointment order specifies that the Court may require him to pay all or a part of the cost of his representation at the conclusion of the case. (*Id.*). Furthermore, as to the second requirement, Shane does not proffer any reason to believe (let alone

make a prima facie showing) that the grand jury erred in finding there was probable cause that the seized assets constitute or are derived from gross proceeds traceable to the commission of the offenses. Consequently, even if Shane had requested a hearing, he would not be entitled to one on the present record.

### III. CONCLUSION

For all of the reasons discussed, Shane's Motion to unfreeze assets to pay for attorney's fees is denied. Given that the Assistant Federal Public Defender who previously was appointed to represent Shane is no longer with the Federal Public Defender's Office in the Erie division, replacement counsel will be appointed to represent him in this case pursuant to the provisions of the Criminal Justice Act, 18 U.S.C. § 3006A.

An appropriate order follows.

### ORDER OF COURT

AND NOW, this 17th day of January, 2023, for the reasons set forth in the Memorandum above, IT IS HEREBY ORDERED that Defendant Shane Hvizdzak's Motion to Unfreeze Limited Assets to Pay for Attorney's Fees, (Docket No. 94), is DENIED.

IT IS FURTHER ORDERED that replacement counsel shall be appointed forthwith to represent Defendant pursuant to the provisions of the Criminal Justice Act, 18 U.S.C. § 3006A.[7]

*s/ W. Scott Hardy*  
W. Scott Hardy  
United States District Judge

cc/ecf: All counsel of record

---

[7] For reasons set forth in the Order Appointing the Federal Public Defender, (*see* Docket No. 84), and reiterated herein, replacement counsel will be appointed for Shane with the proviso that the Court may require him to pay all or a part of the cost of his representation at the conclusion of the case.