**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 21-30E |
| | ) | |
| SHANE HVIZDZAK | ) | |

**<u>MEMORANDUM ORDER</u>**

Defendant Shane Hvizdzak and his co-defendant, Sean Hvizdzak, are charged in a 65-count Indictment with conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349; wire fraud, in violation of 18 U.S.C. §§ 1343 and 2; and money laundering, in violation of 18 U.S.C. §§ 1957 and 2. (Docket No. 1). Specifically, Defendant is charged with one count of conspiracy to commit wire fraud (Count 1), thirty-nine counts of wire fraud (Counts 2-24, 29-37, 39-40 and 49-53), and ten counts of money laundering (Counts 56-65). (*See id.*). Jury selection and trial are scheduled to commence on October 20, 2025. (Docket No. 173).

Presently before the Court is Defendant's Motion in Limine to Exclude Evidence of Personal and Financial Impact of Investment Loss, which is opposed by the Government. (Docket Nos. 189, 192). Defendant seeks a ruling "precluding any evidence or argument, including witness testimony, about the negative consequences of [his] alleged offenses on investors, including the impact on their personal and financial situations or their health." (Docket No. 189 at 1). Defendant concedes that victim impact testimony may be relevant in limited circumstances to show specific intent, but testimony that goes beyond what is reasonable to demonstrate intent is improper. (*Id.* at 2). According to Defendant, the impact on the investors' personal and financial situations is not relevant to establishing the elements of the charged offenses because it does not show whether his statements to investors were misrepresentations, nor does it shed light on his intent. (*Id.*). Further,

1

Defendant maintains that the probative value of evidence about the effects of the alleged scheme on the victims is substantially outweighed by the danger of unfair prejudice.  (*Id.* at 3).  As such, Defendant advocates that all evidence related to the impact on investors should be precluded under Federal Rules of Evidence 401-403.  (*Id.*).  For reasons that follow, Defendant's Motion will be denied.

In addressing the admissibility of victim impact testimony during the Government's case-in-chief, the Third Circuit Court of Appeals has explained that "the difficulty of proving a defendant's specific intent in fraud cases requires 'a liberal policy . . . to allow the government to introduce evidence that even peripherally bears on the question of intent.' " *United States v. Davis*, 2023 WL 195159, at *4 (3d Cir. Jan. 17, 2023) (quoting *United States v. Copple*, 24 F.3d 535, 545 (3d Cir. 1994)).  As the Court of Appeals explained, evidence that "someone was victimized by the fraud" provides "some evidence of the schemer's intent."  *Copple*, 24 F.3d at 545.  Further, "evidence of a victim's loss suffices to prove the defendant's specific intent to defraud, as does evidence of 'the defendant's failure to take any steps to ameliorate the loss.' " *Davis*, 2023 WL 195159, at *4 (quoting *Copple*, 24 F.3d at 545).  "The same goes for testimony about the effect of those losses, but . . . district courts [are cautioned] to 'exercise their wise discretion' and admit only testimony that is 'reasonable to prove [the defendant's] specific intent to defraud.' " *Id.* (quoting *Copple*, 24 F.3d at 545).  The Court of Appeals summarized its precedents on this matter as "boil[ing] down a simple proposition: district courts *may* admit victim impact testimony, but they may not admit too much of it, nor can they admit testimony that goes 'beyond anything that was reasonable to prove [the defendant's] specific intent to defraud.' " *Id.* (emphasis in original) (quoting *Copple*, 24 F.3d at 545).

In light of this authority, the Court finds that testimony from investors concerning their investments with Defendant and whether they have received money back is relevant in this case for the jury to determine whether Defendant acted with the intent to defraud the investors. *See Copple*, 24 F. 3d at 545 (observing that "evidence about the victims' losses and [the defendant's] refusal to make good those losses was relevant to show [the defendant's] specific intent to defraud"). Accordingly, Defendant's request to exclude all such impact testimony will be denied.

Despite the admissibility of some investor impact testimony for this purpose, the Court is cognizant that it is impermissible to admit too much testimony, as well as testimony that "[goes] beyond anything that [is] reasonable to prove [the defendant's] specific intent to defraud." *Copple*, 24 F.3d at 545. For instance, in *Copple*, the Court of Appeals found that the district court abused its discretion by admitting the testimony of multiple victims about the negative impact of their losses, including that the losses forced them to utilize their children's college funds and other personal savings and caused adverse effects on their health. *Id.* at 545-46. Similarly, in *United States v. Sokolow*, 91 F.3d 396 (3d Cir. 1996), the Court of Appeals observed that victim impact testimony from 20 witnesses "provided significant embellishment concerning adverse personal consequences" because the Government asked "every victim who testified whether he or she suffered any adverse consequences[1] from the unpaid claims" in an attempt to "highlight the personal tragedies of the victims." *Id.* at 407.

At this juncture, the Government submits that it "intends to elicit testimony from victim investors concerning the amount of money they invested with the defendants and whether they have received any of the money back." (Docket No. 192 at 2). As proffered, such testimony

---

[1] For example, one victim testified that she had been hassled by collection agencies, suffered from depression, and was completely tormented, while another victim testified that "his life had been destroyed," that he was a "nervous wreck," and that he had attorney's bills to pay because his claim was denied. *Sokolow*, 91 F.3d at 407, n.13.

appears to be permissible consistent with controlling precedent. However, the Government further submits that "[t]estimony will also be elicited from a smaller group of victim investors as to the impact that the loss of this money has had on the investor." (*Id.*). The Government did not specify how many individuals comprise this smaller group of investors or what their impact testimony will encompass. Therefore, at the appropriate time, the Court believes it will be prudent for the Government to make a proffer concerning that information. To that end, it bears reiterating that the Court of Appeals has found impermissible victim impact testimony concerning adverse personal consequences. *See, e.g., Copple*, 24 F.3d at 545-46 (finding impermissible testimony that money used to pay back losses came from savings for children's college educations or required depletion of all personal savings and that paying back the money had affected the witnesses' health). On the other hand, the Court of Appeals ruled that the district court did not err by allowing testimony from a single victim-witness, who testified on behalf of a corporation, that the impact of the defendant's fraud diminished the corporation's ability to serve its community.[2] *See Davis*, 2023 WL 195159, at *4. Accordingly, the Government's presentation of impact testimony from investors must be appropriately tailored consistent with Third Circuit precedent so as to avoid unfair prejudice to Defendant (and his co-defendant). In summary, while the Government will be permitted at trial to elicit impact testimony from investors that is probative for the jury to determine whether Defendant acted with the intent to defraud the investors, the Government will not be permitted to elicit testimony that "highlight[s] the personal tragedies of the [investors]." *Sokolow*, 91 F.3d at 407.

---

[2]    Notably, in *Davis*, the Government did not ask the victim-witness to elaborate further "even though the scope of [the corporation's] loss and its impact on [its] charitable mission likely would have justified a deeper inquiry than the Government undertook." *Davis*, 2023 WL 195159, at *4.

Based on the foregoing, the Court enters the following Order:

AND NOW, this 18th day of September, 2025, IT IS HEREBY ORDERED that Defendant Shane Hvizdzak's Motion in Limine to Exclude Evidence of Personal and Financial Impact of Investment Loss, (Docket No. 189), is DENIED.

However, IT IS FURTHER ORDERED that the Government will be required to make a proffer addressing the quantity and type of impact testimony it intends to elicit from investors concerning monetary losses related to investments they made with Defendant.

_s/ W. Scott Hardy_
W. Scott Hardy
United States District Judge

cc/ecf:  All counsel of record